## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WESLEY L. SNELL,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-947
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 15), the Commissioner's response in opposition (Doc. 20), and plaintiff's reply (Doc. 21).

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI in December 2011, alleging disability since November 19, 2011, due to "spinal stenosis (bulging and herniated discs)" and arthritis. These applications were denied initially and upon reconsideration. Following initial denial of his claims, plaintiff also alleged disability due to depression. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On August 16, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

2

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2016.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November
> 19, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: status post lumbar
> laminectomy and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).
>
> 5.   After careful consideration of the entire record, [the ALJ] finds that the
> [plaintiff] has the residual functional capacity ("RFC") to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except that he can only
> occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.
> The [plaintiff] can frequently balance and climb ramps and stairs.   He is capable
> of completing only simple routine tasks in which instructions can be repeated as
> necessary, and of completing only tasks which are relatively static in nature and in
> which changes are infrequent and can be explained.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565
> and 416.965).[1]

---

[1] Plaintiff's past relevant work was as a butcher, meat cutter, and die cast operator, all of which required
"more than light physical exertion."   (Tr. 21).

7. The [plaintiff] was born [in] . . . 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 19, 2011, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-23).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light unskilled occupations such as cleaner (1,700 jobs regionally and 275,000 jobs nationally), packaging machine operator/tender (1,600 jobs regionally and 168,600 jobs nationally), and packer/hand packager (2,500 jobs regionally and 260,000 jobs nationally).   (Tr. 22).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Specific Errors

On appeal, plaintiff contends that the ALJ erred by: (1) declining to afford controlling

weight to the mental and physical evaluations of his treating physician, Dr. Leelmohan

Ravikumar, M.D., and (2) failing to evaluate and assign weight to the opinion of consulting

examining psychologist Dr. Taylor Groneck, Psy.D. (Docs. 15, 21).

### 1. Weight to the treating physician

Plaintiff alleges that the ALJ erred in evaluating the opinions of his treating physician, Dr.

Ravikumar. Plaintiff alleges that the ALJ did not set out in her written decision the treating

source rule, the factors to be considered in evaluating a medical opinion under the Social Security

regulations, and the requirement that the ALJ provide "good reasons" for failing to give controlling weight to a treating source opinion and for the ultimate weight given that opinion. (Doc. 15 at 8-9). Plaintiff further alleges that the ALJ improperly rejected Dr. Ravikumar's opinion as to his mental limitations on the sole ground Dr. Ravikumar is a family medicine physician, not a specialist in the area of mental health. (*Id*. at 9). Finally, plaintiff alleges that the ALJ erred by relying on the non-examining state agency medical source opinions because the Social Security regulations require the ALJ to perform a longitudinal evaluation of the evidence and those sources did not have a complete record of plaintiff's physical impairments to review, lacking among other records those from the Clinton Family Health Center where Dr. Ravikumar practiced. (*Id*. at 10-11).

In response, the Commissioner alleges that the law does not require the ALJ to recite the treating physician rule in the administrative decision; the ALJ gave "good reasons" for discounting Dr. Ravikumar's opinions as to plaintiff's physical and mental impairments; and the ALJ properly weighed the opinions of the non-examining state agency medical sources. (Doc. 20).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the treating source's opinion is not well supported by such techniques or is inconsistent with the other substantial record evidence, it is not entitled to controlling weight. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. Other factors to be considered are the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407. However, a violation of the good reasons rule can be deemed to be "harmless error" if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it. . . ." *Wilson*, 378 F.3d at 547. *See also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Cole*, 661 F.3d at 940.

**A. The ALJ's failure to state the governing law**

Plaintiff alleges that the ALJ did not set out in her written decision the treating source rule, the factors to be considered in evaluating a medical opinion under the Social Security regulations, and the requirement that the ALJ provide "good reasons" for failing to give

controlling weight to a treating source opinion and for the ultimate weight given that opinion. (Doc. 15 at 8-9).

The governing rules and regulations require the ALJ to analyze the evidence of record in accordance with the governing rules and regulations in order to comply with the treating source rule. Plaintiff does not cite any authority for the proposition that an ALJ must go beyond this and set out the governing law in her written decision in order to comply with the treating source rule. Plaintiff's allegation that the ALJ erred by failing to state the governing law in her written decision is not well-taken.

### B. Plaintiff's mental impairments

Dr. Ravikumar completed both a mental RFC assessment and a physical capacity evaluation on May 14, 2013. (Tr. 542-46). Dr. Ravikumar opined that plaintiff had mild limitations (defined as an inability to function less than 10% of the work day or work week in that particular area) in the following areas: ability to accept instruction from or respond appropriately to criticism from supervisors or superiors; ability to perform and complete work tasks in a normal work day or work week at a consistent pace; ability to maintain attention and concentration for more than brief periods of time; and ability to tolerate customary work pressures. (Tr. 542-44). Dr. Ravikumar opined that plaintiff had no impairment in any other area of work functioning. (Tr. 542-43). Dr. Ravikumar indicated that plaintiff's condition was not likely to deteriorate if he was placed under stress, including the stress of a regular full-time job. (Tr. 544). Dr. Ravikumar concluded that plaintiff was "likely to have partial or full day unscheduled absences from work occurring 5 or more days per month due to the diagnosed conditions and/or side effects of medication." (*Id.*).

9

The ALJ did not comply with the treating physician rule in evaluating Dr. Ravikumar's opinion of plaintiff's mental limitations.   The ALJ gave Dr. Ravikumar's opinion "little weight" on the sole ground the records showed he is "a medical doctor with expertise in the area of physical conditions and is not qualified to comment upon limitations due to mental health[.]" (Tr. 21).   While specialization is one factor to be considered in determining the weight to afford a treating physician's opinion, it is one of only several factors to be weighed.   20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).   The ALJ did not consider any of the remaining factors and did not determine whether Dr. Ravikumar's assessment of plaintiff's mental limitations was well-supported by his own findings and whether it was not inconsistent with the other substantial evidence in the case record.   *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). Thus, the ALJ violated the "good reasons" rule in weighing Dr. Ravikumar's assessment of plaintiff's mental limitations.

Nonetheless, the ALJ's procedural error does not require reversal of her decision. Rather, Dr. Ravikumar's mental RFC assessment is so "patently deficient" that the Commissioner could not possibly credit it.   *Wilson*, 378 F.3d at 547.   Dr. Ravikumar reported largely normal mental findings, finding only mild limitations in 4 of 16 areas of mental functioning and no limitations in the remaining areas of functioning.   Moreover, Dr. Ravikumar did not list any diagnosed psychological conditions or side effects of medications in either the mental RFC assessment or the physical capacity evaluation.   Yet, despite these benign mental functioning findings, Dr. Ravikumar opined in the mental RFC assessment that plaintiff would miss five or more unscheduled partial or full days of work per month due to his diagnosed conditions and the side effects of his medications.   Dr. Ravikumar did not link plaintiff's mild

10

mental limitations with the likelihood of significant unscheduled absences from work, and he provided no support in either of his assessments for his conclusion that plaintiff would have unscheduled absences from work due to his mental impairments. Nor has plaintiff pointed to evidence in the record that supports Dr. Ravikumar's conclusion that he is likely to miss a significant number of days of work due to his mental impairments and side effects from his medications. For these reasons, Dr. Ravikumar's mental RFC assessment is "patently deficient." *Wilson*, 378 F.3d at 547. The ALJ's failure to weigh Dr. Ravikumar's assessment of plaintiff's mental impairments in accordance with the treating physician rule is therefore harmless error and does not warrant reversal of the ALJ's decision.

### C. Plaintiff's physical impairments

Plaintiff alleges that the ALJ erred by crediting the opinions of the non-examining state agency physicians over Dr. Ravikumar's assessment of his physical impairments. Dr. Ravikumar assessed plaintiff's physical functional capabilities in May 2013 as follows: In an 8-hour workday, plaintiff can stand and walk a total of 4 hours each and 30 minutes at one time, sit a total of 2 hours and 15 minutes at one time, and lift up to 10 pounds rarely (defined as "once in a while, not in work setting, such as ½ gal[lon] milk, shoes, small pan"); he cannot use his feet for repetitive movements as in operating foot controls; he can occasionally squat and can never bend, crawl, and climb steps or ladders; and he is likely to have partial or full-day unscheduled absences from work occurring five or more days per month due to his diagnosed conditions, pain, and/or the side effects of medication. (Tr. 545-46). Dr. Ravikumar noted that plaintiff had undergone lower lumbar, lumbar spine, and cervical spine surgery and had chronic radiation to the right lower leg; he had decreased strength in the right hip with numbness that was improved

11

with medication; and his pain management specialist noted pain in the lumbar area and bilateral radiation that was worse with bending and repetitive leg movements. (Tr. 546).

The ALJ gave "little weight" to Dr. Ravikumar's physical capacities evaluation because she found it was not supported by the evidence of record, including Dr. Ravikumar's own treatment notes. (Tr. 21). The ALJ noted that Dr. Ravikumar reported in February 2013 that plaintiff had no "focal deficits" (Tr. 628) and in March 2013 he reported there was "no loss of sensation" (Tr. 630).

The ALJ noted that aside from Dr. Ravikumar's opinion, which was accorded little weight, there were no other assessments of plaintiff's functional capacity from a treating or examining source. (Tr. 21). Based on the absence of any other assessments of plaintiff's functional capacity by a treating or examining source and plaintiff's "lack of credibility," the ALJ relied on the assessments of the non-examining state agency physicians in assessing an RFC for light work.[1] (Tr. 21). State agency physician Dr. Maria Congbalay, M.D., reviewed the record and issued an assessment dated January 17, 2012, finding that plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk and sit about six hours each in an 8-hour workday; frequently climb ramps and stairs; and occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch and crawl. (Tr. 60). On reconsideration in May 2012, Dr. Sarah Long, M.D., affirmed Dr. Congbalay's assessment as written. (Tr. 81-82).

"Although the opinion of a treating physician generally is given more weight, [the Sixth

---

[1] The ALJ discounted plaintiff's credibility based on his treating neurosurgeon's report in January 2011 that plaintiff could return to work without any functional restrictions three months post status a lumbar laminectomy (Tr. 272); plaintiff's return to heavy duty work until November 2011, until he was discharged for violating a workplace policy (Tr. 206, 504, 518); and plaintiff's conviction for buying and selling Sudafed for a profit in April 2012 (Tr. 572). Tr. 19-20). Plaintiff does not challenge the ALJ's credibility finding.

Circuit] has recognized that consultative opinions may be credited where they are supported by the record." *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 177 (6th Cir. 2009) (citing *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993); *Shavers v. Sec'y of Health & Human Servs.,* 839 F.2d 232, 235 (6th Cir. 1987)). A state agency reviewing doctor's opinion may be entitled to greater weight than that of a treating or examining doctor when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Blakley*, 581 F.3d at 409 (quoting SSR 96-6p, 1996 WL 374180, at *3). However, *Blakley* does not impose a "blanket prohibition" against an ALJ adopting a non-examining source's opinion when the source has not reviewed the entire record. *Kepke v. Comm'r of Social Security*, No. 15-1315, 2016 WL 124140, at *7 (6th Cir. Jan. 16, 2016). *Blakley* requires "only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record." *Id.* (citing *Blakley*, 581 F.3d at 409). "In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Id.*

Plaintiff has failed to show that the ALJ erred by crediting the state agency reviewing physicians' opinions over the physical capacity evaluation of Dr. Ravikumar. Plaintiff alleges that the reviewing physicians' opinions in this case were not based on a review of the complete case record as required under SSR 96-6p. (Doc. 15 at 11). Plaintiff alleges that the reviewing physicians did not have before them for their review records from the Clinton Family Health Center and other sources "covering the period at issue and helping to form the basis for Dr.

13

Ravikumar's opinion." (*Id*.). However, once the ALJ weighed the treating physician's opinion and gave it little weight, the ALJ was not precluded from crediting the non-examining physicians' opinions simply because they did not have all of the medical evidence of record before them at the time of their review. *Kepke*, 2016 WL 124140, at *7. The ALJ acknowledged that the state agency physicians issued their opinions in January and June 2012. (Tr. 21). Plaintiff has not directed the Court to any specific treatment notes, clinical findings, or other evidence in the record that post-dates these assessments which would undermine the opinions of the state agency doctors and dictate a different conclusion. In the absence of any argument or showing by plaintiff that Dr. Ravikumar's assessment is well-supported by medically acceptable clinical and laboratory diagnostic techniques contained in the treatment records from the Clinton County Health Center or other evidence post-dating the state agency physicians' assessments, the Court cannot conclude the ALJ erred by relying on the state agency doctors.

Plaintiff further alleges that the ALJ violated her duty to fully and fairly develop the record by failing to request a consultative physical examination or to obtain a medical expert to testify at the ALJ hearing. (Doc. 15 at 10-11). Plaintiff appears to argue that the ALJ considered herself bound to accept the reviewing physicians' opinion when in fact she could have pursued these other options to expand the record. (Doc. 15 at 10-11, citing Tr. 21- ALJ stated that "great reliance must be placed" on the reviewing physicians' assessments). The Social Security regulations provide that the ALJ *may* need to take additional action before issuing a decision if the evidence in the claimant's case record is insufficient or inconsistent. 20 C.F.R. §§ 404.1520b, 416.920b. If the evidence is inconsistent, the ALJ will weigh the relevant

14

evidence and make a determination as to whether the individual is disabled based on the evidence of record if possible. *Id.* If the evidence of record is insufficient for the ALJ to determine whether the claimant is disabled or the ALJ is otherwise unable to reach a decision after weighing the evidence, the ALJ may request additional existing records or request that the claimant undergo a consultative examination in order to reach a decision. *Id.* Here, the ALJ clearly indicated in her opinion that she was accepting the reviewing physicians' opinions and the limitations they assessed because she rejected Dr. Ravikumar's assessment as unsupported by the other evidence of record and by his own treatment notes; there were no other physical functional assessments in the record that conflicted with the non-examining physicians' assessments; and plaintiff lacked credibility. (Tr. 21). The ALJ reasonably credited the physical capacity assessments of Drs. Congbalay and Long over the assessment of Dr. Ravikumar for the reasons the ALJ stated. Plaintiff has not cited any authority or evidence to show that the ALJ was required to obtain an additional medical assessment or the opinion of a medical expert given the record before the ALJ and her evaluation of the evidence.

**D. Conclusion**

The ALJ did not err in weighing the medical opinion evidence provided by plaintiff's treating physician and the non-examining state agency physicians. The ALJ's decision to reject the opinions of plaintiff's treating physician and to credit the latter opinions is supported by substantial evidence. Plaintiff's first assignment of error should be overruled.

**2. The consultative examining psychologist's opinion**

Plaintiff alleges that the ALJ erred by failing to evaluate and assign weight to the opinion of consultative examining psychologist Dr. Groneck. (Doc. 15 at 12-13; Doc. 21 at 3-4). Dr.

Groneck evaluated plaintiff on May 26, 2012. (Tr. 516-21). Plaintiff's chief complaints were solely physical in nature. (Tr. 516). Plaintiff reported he had started seeing a psychiatrist, Dr. Fred Luten, one month earlier and was seeing him twice a month. (Tr. 517). Plaintiff reported he had never attempted suicide or engaged in self-harming behaviors. (Tr. 518). Plaintiff described his recent mood as "edgy because I can't do what I want to do physically. Otherwise, I'm okay. I get disappointed with myself sometimes." (*Id.*). Plaintiff reported "feeling down on himself" for periods which lasted a few hours, and he described his energy level as adequate. (*Id.*). Plaintiff denied crying spells, mania, delusions, hallucinations, PTSD, or panic. (*Id.*). Plaintiff reported that he had been fired from his last job for violating company policy and he denied a history of problems with understanding or remembering job instructions, focusing at work, or getting along with others at work. (*Id.*). He described himself as a "people person" who "get[s] along with everybody." (*Id.*). On mental status examination, Dr. Groneck did not find any abnormalities in appearance and behavior, flow of conversation and thought, mood and affect, anxiety level, mental content, and insight and judgment. (Tr. 519). Dr. Groneck reported that plaintiff's recent and remote recall appeared adequate but that his short-term memory and working memory were poor. (*Id.*). Dr. Groneck stated that plaintiff's attention and concentration were limited as he "seemed to be in pain and had difficulty focusing." (*Id.*). Dr. Groneck assessed plaintiff's general level of intelligence as falling in the low average range. (*Id.*).

Dr. Groneck diagnosed plaintiff with Adjustment Disorder with Depressed Mood and

assigned a GAF score of 68.[2]  (Tr. 520).  Dr. Groneck assessed plaintiff as (1) likely to have

difficulty with multi-step job instructions as a result of impaired focus, and (2) likely to "work at

a slower pace as a result of concentration difficulties, secondary to his reported pain level" and to

"show work pace slower than other work peers."  (Tr. 521).  Dr. Groneck assessed no

limitations in plaintiff's ability to conform to social expectations in a work setting and no

limitations in his ability to respond appropriately to work pressures in a work setting.  (Id.).

The ALJ summarized Dr. Groneck's findings in her written decision, stating that Dr.

Groneck diagnosed adjustment disorder with depressed mood and concluded that plaintiff would

have difficulty with multi-step instructions; he "may show work pace slower than other work

peers"; and he has no limitations in his ability to conform to social expectations in a work setting

or in his ability to respond appropriately to work pressures in a work setting.[3]  (Tr. 20, citing Tr.

516-23).  The ALJ did not evaluate and assign weight to Dr. Groneck's opinion.  The ALJ

evaluated only the remaining mental health assessments of record.  The ALJ rejected the mental

limitations imposed by treating physician Dr. Ravikumar and credited the mental limitations

assessed by the state agency reviewing psychologist, who found that plaintiff is able to complete

simple, routine tasks for which instructions can be repeated as necessary; he is limited due to

difficulty focusing and concentrating as a result of pain symptoms; and he is capable of

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  Id.  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 34.  The DSM-IV categorizes individuals with scores ranging from 61-70 as having "[s]ome symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.")  Id.

[3] The ALJ mistakenly wrote that Dr. Groneck assigned a GAF score of 48 rather than 68 to plaintiff.  (Tr. 20).

completing tasks that are relatively static in nature, involving infrequent changes, which can be explained. (Tr. 21, citing Tr. 82-83, 95-96).

The Commissioner argues that it was not error for the ALJ to fail to specifically state the "weight" she assigned to Dr. Groneck's opinion. (Doc. 20 at 19). The Commissioner alleges that despite the ALJ's omission, it is "implicit and obvious" from her decision that she gave great weight to non-examining psychologist Dr. Rivera's opinion, which forms the basis for the mental RFC, and less weight to Dr. Groneck's opinion. The Commissioner further contends that even if the ALJ erred by failing to use the term "weight" when assessing Dr. Groneck's opinion, the error was harmless because "the ALJ's reasoning is apparent from a reading of the decision as a whole"; therefore, plaintiff was not prejudiced on the merits or deprived of a substantial right as a result of the ALJ's procedural lapse. *Id*. (citing *Rabbers*, 582 F.3d at 654).

The ALJ is required to evaluate all of the medical opinions of record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). *See also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Unless a treating source's opinion is given controlling weight, Social Security regulations provide that every medical opinion will be evaluated and weighed considering the following factors: the length and nature of the treatment relationship, the evidence that the source offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the source was practicing a specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Ealy*, 594 F.3d at 514. When an ALJ completely ignores the evidence from non-treating sources that is inconsistent with the ALJ's RFC assessment, a remand may be required. *Nolan v. Comm'r of Soc. Sec*., No.

18

2:12-cv-477, 2013 WL 4831029, at *4 (S.D. Ohio Sept. 10, 2013). A remand will not be

required when the ALJ's omission is harmless error. *Rabbers*, 582 F.3d at 654 ("[I]f an agency

has failed to adhere to its own procedures, we will not remand for further administrative

proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial

rights because of the agency's procedural lapses.'") (quoting *Connor v. U.S. Civil Serv. Comm'n*,

721 F.2d 1054, 1056 (6th Cir. 1983)); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th

Cir. 2013) (finding perceived omission from hypothetical to the VE to be harmless error and

citing *Rabbers* for the proposition that an administrative agency's failure to follow its own

procedures is reviewed for harmless error).

     Here, the ALJ erred by failing to evaluate Dr. Groneck's mental health assessment and

assign weight to his opinion. The ALJ's decision includes no analysis of the factors in 20

C.F.R. §§ 404.1527(c) and 416.927(c) as they apply to Dr. Groneck's opinion, such as whether

his conclusions are supported by his examination findings or are consistent with the record as a

whole. The ALJ simply summarized Dr. Groneck's conclusions in her written decision and did

not further consider his findings and opinions. (Tr. 20). The ALJ's failure to comply with the

Social Security regulations by not weighing this opinion evidence was error. *See Spurlock v.

Comm'r of Soc. Sec.*, No. 1:14-cv-990, 2015 WL 7423621, at *8 (S.D. Ohio Nov. 23, 2015)

(Report and Recommendation), *adopted*, 2015 WL 9460471 (Dec. 28, 2015).

     Further, the ALJ's failure to evaluate and weigh the examining psychologist's opinion is

not harmless error. Dr. Groneck assessed limitations in the following areas: (1) plaintiff is likely

to have difficulty with multi-step job instructions, and (2) plaintiff is likely to work at a slower

pace than his peers. (Tr. 521). The ALJ included the following restrictions in the RFC to

account for plaintiff's difficulty with multi-step instructions: plaintiff "is capable of completing only simple routine tasks in which instructions can be repeated as necessary, and of completing only tasks which are relatively static in nature and in which changes are infrequent and can be explained." (Tr. 19). These restrictions are insufficient to accommodate plaintiff's difficulties with pace. *See Spurlock*, 2015 WL 7423621, at *8 (limiting the plaintiff to work involving simple instructions and simple tasks did not account for the consultative examining psychologist's assessment that plaintiff "may show work pace slower to that of his work peers" on "tasks requiring rapid timed performance") (citing *Ealy*, 594 F.3d at 516-17). The ALJ did not include any additional restrictions in the RFC to account for pace-based restrictions. Thus, the RFC is inconsistent with Dr. Groneck's assessment. It is impossible to discern from the ALJ's written decision why the ALJ rejected Dr. Groneck's assessment of limitations in this area and to determine whether her reasons are substantially supported by the evidence. Because Dr. Groneck assessed additional pace-based mental limitations that the ALJ did not include in the RFC, the ALJ's failure to analyze Dr. Groneck's opinion in accordance with the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) is not harmless error.

The hypothetical the ALJ relied upon to find plaintiff is able to perform a significant number of jobs in the national economy is also inconsistent with Dr. Groneck's opinion. The VE who testified at the ALJ hearing could not definitively state whether a hypothetical individual with the limitations proposed by the ALJ could maintain competitive, unskilled employment on a sustained basis if the individual consistently worked at a slower pace than other work peers as assessed by Dr. Groneck. (Tr. 51-52). The VE testified only that it "is possible" the individual could do so, even if he was the slowest member of the crew, so long as the individual were

20

meeting "some base line." (Tr. 52). The VE did not specify the base line the individual would have to meet. The VE's equivocal testimony is insufficient to support a finding that an individual with the pace-based restrictions assessed by Dr. Groneck would be able to perform a significant number of jobs in the national economy. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481-82 (6th Cir. 1988) ("[I]f the vocational . . . expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion.") (citing *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Graves v. Secretary of Health, Education and Welfare,* 473 F.2d 807 (6th Cir. 1973); *Vasquez v. Schweiker,* 701 F.2d 733 (8th Cir. 1983)). Because the ALJ failed to evaluate Dr. Groneck's opinion and the pace-based restrictions he assessed as required under the Social Security regulations, the ALJ was not entitled to rely on the VE's testimony at step five of the sequential evaluation process to five plaintiff is not disabled.

For these reasons, the ALJ erred by failing to evaluate the functional mental limitations assessed by Dr. Groneck and to assign weight to Dr. Groneck's opinion. The ALJ's omission is not harmless error. Dr. Groneck's opinion is inconsistent with both the RFC formulated by the ALJ and the ALJ's finding that there are a significant number of jobs in the national economy plaintiff is able to perform. Plaintiff's second assignment of error should therefore be sustained.

### III. This matter should be reversed and remanded

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir.

21

1994).   This matter should be remanded for further proceedings, including the evaluation and weighing of the medical opinion of consultative examining psychologist Dr. Groneck.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and the matter be **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g)..

Date: _1/26/2016_ 

Karen L. Litkovitz
United States Magistrate Judge

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WESLEY L. SNELL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-947
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).